**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Clarence Winfrey, Employee, Claimant, Respondent,

v.

Archway Services, Inc., Employer, and American Fire & Casualty Insurance Company c/o Liberty Mutual Group, Carrier, Appellants.

Appellate Case No. 2014-001788

———————

Appeal From The Workers' Compensation Commission

———————

Unpublished Opinion No. 2017-UP-336
Heard December 6, 2016 – Filed August 2, 2017

———————

**AFFIRMED**

———————

Brett Harris Bayne, of McAngus Goudelock & Courie, LLC, of Columbia, for Appellants.

Preston F. McDaniel, of McDaniel Law Firm, of Columbia, for Respondent.

———————

**PER CURIAM:** Archway Services, Inc., and American Fire & Casualty Insurance Company c/o Liberty Mutual Group (collectively Archway) appeal from the order of the Appellate Panel of the Workers' Compensation Commission (Appellate

Panel) finding Clarence Winfrey suffered a compensable injury under the Workers' Compensation Act. Archway alleges the Appellate Panel erred in (1) failing to vacate the order of the Single Commissioner because the Single Commissioner erred in holding the original hearing of Archway's objection because the Single Commissioner operated in an appellate capacity without proper jurisdiction; (2) failing to find a date on which Winfrey suffered a plaque rupture in his heart; (3) failing to find what caused the plaque rupture in Winfrey's heart; (4) failing to find a date on which Winfrey suffered a myocardial infarction; (5) relying on Dr. Jeffery Travis's written medical opinion when the evidence presented at the hearing and his own subsequent deposition testimony directly contradicted his written medical opinion; (6) relying on Dr. Lanneau Lide's written medical opinion when the evidence presented at the hearing and his own subsequent deposition testimony directly contradicted his written medical opinion; (7) relying on Dr. Karen Greenfield's written medical opinion when the evidence presented at the hearing and her own subsequent deposition testimony directly contradicted her written medical opinion; (8) finding Winfrey began sweating the night of the electrical shock when Winfrey's own testimony refutes that finding; and (9) finding that three physicians have opined the electrical shock resulted in Winfrey's heart attack regardless of the date on which the heart attack occurred. We affirm.

## II.    FACTS

On May 22, 2013, Winfrey received an electrical shock while working on a rotisserie oven in the course of his employment. On May 28, 2013, Winfrey underwent surgery at Lexington Medical Center for a myocardial infarction and ventricular septal defect. Winfrey filed a Form 50, Employee's Notice of Claim, on June 6, 2013, alleging he suffered an injury by accident arising out of and in the course and scope of his employment to his heart, left hand/arm/shoulder, neck, head, brain, and chest. Archway began providing Winfrey with temporary total disability benefits on June 1, 2013, continuing through September 14, 2013. Archway additionally provided Winfrey medical treatment between the date of the injury and September 12, 2013. On September 12, 2013, Archway terminated Winfrey's workers' compensation benefits following a good faith investigation.

Following the Single Commissioner's order finding Archway complied with section 42-9-260 of the South Carolina Code (2015) in denying Winfrey worker compensation benefits based on a good faith investigation, Winfrey filed a Form 50 with the Commission alleging he had suffered a compensable injury. Winfrey requested a hearing before the Commission through his Form 50. Archway filed a

Form 51 denying Winfrey had suffered a compensable injury. The hearing was held before the Single Commissioner on January 13, 2014.

Archway objected on jurisdictional grounds to the Form 50 hearing being held because of the outstanding order from the Form 15 hearing held in response to Archway's denial of benefits after a good faith investigation under section 42-9-260. Specifically, Archway alleged the Single Commissioner in the Form 50 hearing would be sitting in a quasi-appellate capacity because the order of the Single Commissioner in the Form 15 hearing found Winfrey suffered a heart attack on May 28, 2013, and if the Commissioner in the Form 50 hearing found another date, the Commissioner would be repudiating the order of the Commissioner in the Form 15 hearing. After considering Archway's objection, the Single Commissioner denied the motion and proceeded with the Form 50 hearing. In the order following the hearing, the Single Commissioner found with respect to Archway's jurisdictional argument:

> This Commissioner was assigned to hear this case as to the merits/compensability issue. The decision of Commissioner Beck [(the Form 15 hearing Commissioner)] is under appeal and after the arguments made at the hearing on this issue were considered by me, this Commissioner would not have held this hearing on the merits if this Commissioner did not believe that in doing so that I was not operating within my authority to hold the hearing on the merits/compensability. Further, in reference to my decision as set forth hereinafter, this Order is not inconsistent with Commissioner Beck's Findings and no attempt was made to change or disagree with Commissioner Beck's Finding of a heart attack occurring on a particular date. In fact, it is my specific and intentional finding based on the evidence presented before me that [Winfrey] injured his heart on the date of the accident. Under the testimony and evidence presented, having made that decision, whether or not the heart attack occurred on a particular date is not made and there is no Finding contained within this Order that [Winfrey] sustained a heart attack on the date of the shock/electrocution. This order is written to make Findings in reference to the merits of the claim as to

whether or not the injury to [Winfrey's] heart stemmed from the accident. Whether or not I agree or disagree with Commissioner Beck's Finding as to a particular date for the heart attack, no decision is made on that issue so as to prevent any conflict with the previous Decision by commissioner Beck and as being an unnecessary Finding to the issues before me, i.e., merits/compensability.

In further support of the decision to hold the Form 50 hearing, the Single Commissioner cited the following language from Commissioner Beck's order from the Form 15 hearing:

It is furthermore ordered that all other issues in contention, specifically including the question of whether [Winfrey] sustained an injury by accident arising out of and in the course of his employment with [Archway] resulting [in] compensable disability is preserved for adjudication at the hearing set pursuant to [Winfrey's] October 21, 2013, Form 50 Employee's Request for Hearing.

During the Form 50 hearing, Winfrey testified he was working on a rotisserie oven at a Publix Supermarket on May 22, 2013, when he came into contact with an exposed electrical wire that caused a significant shock to his left arm all the way up to his neck, shoulder, and chest. Winfrey stated he immediately called his supervisor Bobby Ruppe to notify him of the electrical shock. Winfrey recalled he had never suffered such a significant shock in his life. Winfrey testified he awoke the next morning dripping in sweat yet attempted to go to work. Winfrey recalled he made it to Wal-Mart to work on some machinery in the deli but could not proceed with the tasks because he was in too much pain. Winfrey stated he spent the next few days at home suffering significant pain, which he attempted to treat with Motrin and Tylenol. Winfrey testified he presented to Doctor's Care on May 28, 2013. Dr. Karen Greenfield examined him and became alarmed after performing an EKG. Winfrey was immediately transferred to Lexington Medical Center and into the care of Dr. Lanneau Lide and Dr. Jeffery Travis. The doctors discovered he had a ventricular septal defect and required immediate surgery. Winfrey underwent surgery to repair the defect and has been under the care of Dr. Travis and Dr. Lide since that day.

Following the hearing, the Single Commissioner issued an order finding Winfrey had met his burden of proof by demonstrating by a preponderance of the evidence he sustained a compensable injury to his heart as a result of the electrical shock, which occurred on May 22, 2013. Specifically, the Single Commissioner found Winfrey sufficiently demonstrated the electrical shock resulted in his heart attack, and ventricular septal defect. The Single Commissioner reinstated benefits to September 15, 2013, when benefits were stopped by Archway under section 42-9-260 of the South Carolina Code. Having been found to have sustained a compensable injury to his heart, the Single Commissioner ruled Winfrey is to:

> [R]eceive medical care for all injuries and conditions stemming from the accident that occurred in the matter and to specifically include all conditions related to the heart as found to be causally related by the authorized treating physicians. . . . [Archway] reserve[s] the right to contest the compensability of any injury or condition opined to be related to the injury involving any bodily part, member, organ or system and the right to direct the treatment for all causally related medical problems outside the medical expertise of the two authorized treating physicians including the right to choose authorized treating physicians to provide that medical care.

In support of the finding that Winfrey suffered a compensable injury, the Single Commissioner found Winfrey received an electrical shock during the course of his employment in the range of 240-480 volts resulting in pain that got progressively worse. The Single Commissioner noted Winfrey began sweating the night of the accident and into the next morning. The Single Commissioner specifically relied on the opinions of three physicians, all of whom opined to a reasonable degree of medical certainty that the electrical shock ultimately resulted in Winfrey's heart attack, regardless of the date it actually occurred. The Single Commissioner found the deposition testimony of Dr. Travis, the treating cardiovascular surgeon, to be especially compelling. Further, the Single Commissioner noted Dr. Lide, the treating cardiologist, twice testified he saw no way Winfrey's myocardial infarction and the ventricular septal defect were not related to the electrical shock. The Single Commissioner explained he fully considered the opinion of Dr. Feldman, Archway's expert and the only physician who found no nexus between the accident and the injury, but found his opinion outweighed by the opinions of the other three

doctors, each of whom treated Winfrey rather than simply reviewing his medical records. With respect to Dr. Feldman's conclusions, the Single Commissioner noted Dr. Feldman:

> (a) did not examine [Winfrey] or even speak to [Winfrey]; (b) did not see [Winfrey's] heart, as opposed to Dr. Travis, who held it in his hand; (c) initially states in his written opinion that it is "possible" that there was no connection between the plaque rupture and the electrical shock, and then in the very next sentence states that it is of the "highest certainty"; (d) Dr. Feldman is a cardiologist and not a cardiovascular surgeon; nor has he undergone a surgical residency; and (e) Dr. Feldman was specifically asked to opine in writing as to whether there was a connection between an electrical shock and a [ventricular septal defect], although he does address other pertinent issues for [Archway] in his deposition.

Following the issuance of the Single Commissioner's order, Archway filed a Form 30 and appealed to the Appellate Panel.

The Appellate Panel held a hearing on the matter on May 19, 2014. Following the hearing, the Appellate Panel issued an order affirming the Single Commissioner's order in part and reversing in part. Specifically, the Appellate Panel reversed the Single Commissioner's findings of fact and conclusions of law related to the alleged injury to Winfrey's head, brain, or both. The Appellate Panel denied Winfrey's alleged injury due to insufficient medical evidence after raising the issue before the Commission. The Appellate Panel affirmed all remaining issues decided by the Single Commissioner and appealed by Archway in its Form 30. With respect to the compensability of Winfrey's myocardial infarction and ventricular septal defect, the Appellate Panel found facts essentially identical to those found by the Single Commissioner. Concerning Archway's jurisdictional argument, the Appellate Panel held, pursuant to section 42-3-180 of the South Carolina Code (2015), the Single Commissioner had jurisdiction over the Form 50 hearing such that a hearing on compensability could be conducted despite the ongoing appeal from the Form 15 hearing. This appeal followed.

## III. ISSUES ON APPEAL

1. Whether the Appellate Panel erred by failing to vacate the Single Commissioner's decision and order because the Single Commissioner erred in holding the original hearing over Appellants' objections because, by conducting the hearing and ruling on material compensability issues, the Single Commissioner operated in an appellate capacity without proper jurisdiction?

2. Whether the Appellate Panel erred in failing to find a date on which Winfrey suffered a myocardial infarction?

3. Whether the Appellate Panel erred in failing to find what caused the plaque rupture in Winfrey's heart?

4. Whether the Appellate Panel erred in failing to find a date on which Winfrey suffered a plaque rupture in his heart?

5. Whether the Appellate Panel erred in relying on Dr. Travis's written medical opinion when the evidence presented at the hearing and his own subsequent deposition testimony directly contradicted his written medical opinion?

6. Whether the Appellate Panel erred in relying on Dr. Lide's written medical opinion when the evidence presented at the hearing and his own subsequent deposition testimony directly contradicted his written medical opinion?

7. Whether the Appellate Panel erred in relying on Dr. Greenfield's written medical opinion when the evidence presented at the hearing and her own subsequent deposition testimony directly contradicted her written medical opinion?

8. Whether the Appellate Panel erred in Finding of Fact #7 by finding Winfrey began sweating the night of the electrical shock when Winfrey's own testimony refutes that finding?

9. Whether the Appellate Panel erred in Finding of Fact #9 that three physicians have opined the electrical shock resulted in Winfrey's heart attack regardless of the date on which the heart attack occurred?

## IV.  STANDARD OF REVIEW

The South Carolina Administrative Procedures Act[1] (APA) governs the standard of judicial review in workers' compensation cases. *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981). Under the APA, this court's review is limited to deciding whether the Appellate Panel's decision is unsupported by substantial evidence or is controlled by an error of law. *Hargrove v. Titan Textile Co.*, 360 S.C. 276, 289, 599 S.E.2d 604, 610–11 (Ct. App. 2004). "Substantial evidence is not a mere scintilla of evidence nor evidence viewed from one side, but such evidence, when the whole record is considered, as would allow reasonable minds to reach the conclusion the [Appellate Panel] reached." *Shealy v. Aiken Cty.*, 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000).

"On appeal from [the Appellate Panel], this [c]ourt can reverse or modify the decision if it is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence in the whole record." *Nicholson v. S.C. Dep't of Soc. Servs.*, 411 S.C. 381, 384, 769 S.E.2d 1, 2 (2015). "In a workers' compensation case, the [A]ppellate [P]anel is the ultimate fact-finder." *Id.* at 384, 769 S.E.2d at 3. "Workers' compensation law is to be liberally construed in favor of coverage in order to serve the beneficent purpose of the Workers' Compensation Act; only exceptions and restrictions on coverage are to be strictly construed." *Id.* at 385, 769 S.E.2d at 3.

## V. Archway's Jurisdictional Argument

Archway argues the Single Commissioner in this case sat in an unlawful appellate capacity by ruling on issues material to Winfrey's initial appeal, and therefore, lacked jurisdiction because the Appellate Panel had not yet heard Winfrey's appeal from Commissioner Beck's order. By refusing to find a specific date on which Winfrey's myocardial infarction occurred, Archway asserts the Single Commissioner either implicitly affirmed Commissioner Beck's order finding the heart attack occurred on May 28, 2013, or reversed Commissioner Beck's finding as to the date of the heart attack. Archway contends the Appellate Panel's decision and order should be vacated in its entirety because the underlying hearing should not have been held because the Single Commissioner sat in an unlawful appellate capacity, and therefore, lacked jurisdiction over the matter. We disagree.

---

[1] S.C. Code Ann. §§ 1-23-310 through -400 (2005 & Supp. 2016).

"All questions arising under this title, if not settled by agreement of the parties interested therein with the approval of the commission, shall be determined by the commission. . . ." S.C. Code Ann. § 42-3-180 (2015). "In determining whether a work-related injury is compensable, the Workers' Compensation Act is liberally construed toward providing coverage and any reasonable doubt as to the construction of the Act will be resolved in favor of coverage." *Whigham v. Jackson Dawson Commc'ns*, 410 S.C. 131, 135, 763 S.E.2d 420, 422 (2014).

We find the Single Commissioner had jurisdiction and did not sit in an improper appellate posture by ruling on material issues of compensability. Commissioner Beck's decision and order was issued after Winfrey's Form 15, Section III, request for a hearing. The issues before Commissioner Beck concerned whether Appellants conducted a good faith investigation prior to denying Winfrey coverage as required by section 42-9-260 of the South Carolina Code (2015). Winfrey commenced this present action by filing a Form 50 with the Commission, alleging he suffered a compensable injury under the Act. Therefore, we find the two actions were separate and distinct, and the Single Commissioner in this case had jurisdiction and did not sit in an improper appellate capacity.

## VI. Date of the Myocardial Infarction

Archway claims the Appellate Panel's decision and order is speculative, conjecture, and without evidentiary support because the Appellate Panel failed to find a specific date of when Winfrey suffered his acute myocardial infarction. Archway asserts the Appellate Panel was required to make findings of fact based on the evidence of when the acute myocardial infarction occurred and that the acute myocardial infarction was caused by the electrical shock. Absent these findings, Archway asserts the Appellate Panel cannot make a finding the ventricular septal defect is a compensable injury. We disagree.

The Appellate Panel was ultimately tasked with finding whether Winfrey's various maladies resulted from an injury by accident occurring in the course of his employment. This is an evidentiary question. We review the Appellate Panel's determinations to ensure they are supported by substantial evidence. *See Hargrove*, 360 S.C. at 289, 599 S.E.2d at 610–11 (Under the APA, this court's review is limited to deciding whether the Appellate Panel's decision is unsupported by substantial evidence or is controlled by an error of law.).

The Appellate Panel found Winfrey suffered an accident during the course of his employment on May 22, 2013. Archway does not dispute this occurrence. The Appellate Panel found this accident ultimately led to a myocardial infarction and subsequent ventricular septal defect. We find substantial evidence supports this finding.

Archway contends Winfrey's ventricular septal defect cannot be found to be compensable under the Act absent a finding of the specific date on which Winfrey suffered his myocardial infarction. Such a specific finding is not required. What is necessary is a finding that Winfrey suffered an accident resulting in injury during the course of employment. *See* S.C. Code Ann. § 42-1-160(A) (2015) (stating "'[i]njury' and 'personal injury' mean only injury by accident arising out of and in the court of employment"). Archway has not disputed Winfrey suffered an electrical shock during the course of his employment. Three doctors have opined to a reasonable degree of medical certainty that the electrical shock Winfrey suffered caused the heart attack. Like the Appellate Panel, we find the written opinion and deposition testimony of Dr. Travis, the treating cardiovascular surgeon, to be particularly persuasive. Dr. Travis's written opinion states "I find it quite unbelievable that [Winfrey's] surgery and postoperative course have been considered separate from his electrical injury at work. I see almost no other plausible explanation other than a direct cause and effect." During the course of his deposition, Dr. Travis was asked, "I believe that you've issued a questionnaire in this case, you've indicated that [Winfrey's] condition was brought about by electrical shock of 480 volts is that correct?" Dr. Travis replied, "I believe it, absolutely, had cause (sic) the defect on this presentation." Later in his deposition, the following exchange took place:

> [Archway:] In the medical reports I believe in the post surgical report you talked about seeing, I guess white marks on either other side of the heart.
>
> [Dr. Travis:] Correct
>
> [Archway:] What, I think your opinion was, that probably caused or most likely caused by an electrical shock entering and exiting the heart, is that correct?
>
> [Dr. Travis:] Correct

[Archway:] Have you've [sic] seen anything like that in your career prior to that point?

[Dr. Travis:] Not with the heart, I've certainly seen electrical injuries, when I took care of burn patients, you would see people that were burn [sic] electrically and you would see the type of changes as it entered or exited the extremity which is more common. I've never seen it on a heart, I've never seen anything that looked liked [sic] that on the heart.

[Archway:] Okay

[Dr. Travis:] That's what made me think this was related to his electrical injury, certainly, looked like a [sic] entry, exit wound. It's shriveled, drawn up, kind of welded together around the tissues around it, so I have seen it in other locations, I've never seen it in the heart.

[Archway:] Would the electricity if that -- if those marks are indicative of that, would that electricity, I guess, going through the heart had [sic] caused any issues other than it may have led to the infarction itself?

[Dr. Travis:] It could of rupture [sic] the plaque led to the infarction. I don't think it was directly related to the -- I don't think it made a hole in the heart

[Archway:] Okay

[Dr. Travis:] I think the hole in the heart came from the infarction you know muscle dying over time and the hole developing. I do think it could relate to any electrical disturbance in the heart and ventricular function.

[Archway:] Okay

[Dr. Travis:] Those are the things that it could effect.

Accordingly, we find the evidence in the record substantially supports the Appellate Panel's conclusion that Winfrey's myocardial infarction was caused by the electrical shock he suffered during the course of his employment. Because the record supports a finding that the electrical shock caused the heart attack, it was not necessary for the Appellate Panel to find the specific date on which the heart attack occurred. However, we find it was necessary for the Appellate Panel to hold that Winfrey suffered an injury by accident arising during and in the course of his employment. *See* S.C. Code Ann. § 42-1-160(A) (2015) (stating "'[i]njury' and 'personal injury' mean only injury by accident arising out of and in the course of employment"). We find this is exactly what the Appellate Panel did.

## VII.  Cause of the Plaque Rupture

Archway contends the Appellate Panel erred in failing to find what caused the plaque rupture in Winfrey's heart. Archway argues Winfrey's ventricular septal defect could only be compensable if it was caused by the plaque rupture and the plaque rupture was caused by the electrical shock. Archway posits an award of compensability as to the ventricular septal defect absent a finding as to what caused the plaque rupture in relation to the electrical shock is an award based on surmise, conjecture, and lacking in evidentiary support. We disagree.

We find the Appellate Panel committed no error in failing to find whether Winfrey's plaque rupture was caused by the electrical shock. The Appellate Panel found Winfrey suffered an electrical shock during the course of his employment resulting in a myocardial infarction that caused a ventricular septal defect. As discussed above, we find that ruling to be supported by substantial evidence.

We view the Appellate Panel's finding to encompass Winfrey's plaque rupture. *See Hargrove*, 360 S.C. at 289, 599 S.E.2d at 610–11 (stating that under the APA, "[t]his [c]ourt's review is limited to deciding whether the [Appellate Panel]'s decision is unsupported by substantial evidence or is controlled by some error of law"). Three physicians opined Winfrey's myocardial infarction and attendant ventricular septal defect were caused by the electrical shock he suffered while working on a rotisserie oven during the course of his employment. Dr. Lide admitted during his deposition testimony he could not say definitively whether the electrical shock caused the plaque rupture because modern medicine has been unable to establish what causes a plaque rupture to an absolute certainty. However, Dr. Lide repeatedly stood by his opinion that all of Winfrey's ailments he

observed to that point were caused by the electrical shock. Clearly, this opinion encompasses the plaque rupture.

Further, during his deposition Dr. Travis opined that the plaque rupture, myocardial infarction, and ventricular septal defect were all more likely than not causally related to the electrical shock Winfrey suffered during the course of his employment. Like the Appellate Panel, we find Dr. Travis's deposition testimony and written opinion to be especially compelling given the fact he was the treating cardiovascular surgeon and physically held and observed Winfrey's heart.

Additionally, we recognize the Appellate Panel explicitly stated "[a]ll of the submissions to the Single Commissioner were reviewed, including the testimony presented at the hearing; medical opinions and records; and depositions of [Winfrey], Dr. Lanneau Lide, Dr. Karen Greenfield, Dr. Barry Feldman and Dr. Jeffery Travis." Further, we note the Appellate Panel listed Dr. Feldman's beliefs with regard to the plaque rupture amongst the reasons the Appellate Panel gave greater weight to the opinions of Dr. Lide and Dr. Travis. We recognize that questions regarding weight of the evidence are exclusively within the province of the Appellate Panel. *See Hargrove*, 360 S.C. at 289, 599 S.E.2d at 611 ("The final determination of . . . the weight to be accorded evidence is reserved to the Appellate Panel."). Further, Appellate Panel factual findings are conclusive when there is conflicting evidence. *Id.* at 290, 599 S.E.2d at 611 ("Whe[n] there are conflicts in the evidence over a factual issue, the findings of the Appellate Panel are conclusive."). All of this leads us to the inescapable conclusion that the Appellate Panel fully considered the evidence with respect to the plaque rupture and implicitly found the electrical shock caused the plaque rupture by finding the electrical shock caused the myocardial infarction and ventricular septal defect.

## VIII. Appellate Panel's Failure to Find a Specific Date on which Winfrey Suffered a Plaque Rupture in His Heart

Archway alleges the Appellate Panel erred in finding Winfrey suffered a heart attack sometime between suffering the electrical shock at work on May 22, 2013, and presenting to Doctors Care on May 28, 2013. Archway asserts the key to determining whether Winfrey's ventricular septal defect is compensable is determining whether the plaque rupture was caused by the electrical shock. Archway states the Appellate Panel must find a date on which the plaque rupture occurred in order to find the plaque rupture was caused by the electrical shock. Archway argues the Appellate Panel's decision and order is speculative, conjecture,

and without any evidentiary support absent a specific finding of when Winfrey suffered the plaque rupture.  We disagree.

The Appellate Panel was charged with finding whether Winfrey suffered an injury by accident arising during and in the course of his employment.  *See* S.C. Code Ann. § 42-1-160(A) (stating "'[i]njury' and 'personal injury' mean only injury by accident arising out of and in the course of employment").  As discussed above repeatedly, the Appellate Panel's decision finding Winfrey suffered a compensable injury is supported by substantial evidence.  *See Hargrove*, 360 S.C. at 289, 599 S.E.2d at 610–11 (finding under the APA, this court's review is limited to deciding whether the Appellate Panel's decision is unsupported by substantial evidence or is controlled by an error of law).  Winfrey held the burden of proving he suffered a compensable injury by establishing causation between the accident suffered at work and the resulting injury.  *See Hall v. Desert Aire, Inc.*, 376 S.C. 338, 349, 656 S.E.2d 753, 759 (Ct. App. 2007) ("The claimant has the burden of proving facts sufficient to allow recovery under the Act.").  The three treating physicians each gave opinions to the best of their medical knowledge that Winfrey's ailments were causally related to electrical shock he suffered during the course of his employment.  The Appellate Panel found this sufficiently established that Winfrey suffered a compensable injury under the Act.  As we have repeatedly stated, we find the Appellate Panel's decision and order to be supported by substantial evidence.  Therefore, Winfrey has met his burden of proving a compensable injury, and the exact date of the plaque rupture is only ancillary to that conclusion.

## IX.    Appellate Panel's Reliance on Dr. Travis's Written Medical Opinion

Archway argues the Appellate Panel erred in relying on Dr. Travis's written medical opinion for two reasons: (1) Dr. Travis's opinion that the electrical shock caused Winfrey's heart condition is based solely on the sequence of events between the shock and the acute myocardial infarction as well as the presence of plaque on Winfrey's heart; and (2) Dr. Travis's opinion is based on the fact Winfrey was shocked by 480 volts of electricity which is clearly contradicted by the evidence.  Archway contends the Appellate Panel erred in not properly considering all evidence and reaching an incorrect conclusion in light of the full evidence.  Archway argues Dr. Travis's written opinions do not establish a clear causal connection between the electrical shock and Winfrey's heart attack when read in conjunction with his deposition testimony.  We disagree.

We find the Appellate Panel's reliance on Dr. Travis's testimony to simply be a determination on the weight to be given to evidence. Such a determination is exclusively within the province of the Appellate Panel. *See Hargrove*, 360 S.C. at 289, 599 S.E.2d at 611 ("The final determination of . . . the weight to be accorded evidence is reserved to the Appellate Panel."). Further, we find Archway's contention that Dr. Travis's opinion is based on the fact Winfrey was shocked by 480 volts of electricity is contradicted by the evidence to be correct in theory but unfounded in law. It is true that Dr. Travis admitted in his deposition testimony he had no way of knowing the actual voltage and simply relied on Winfrey's representation in reaching his conclusion. However, Winfrey testified at the hearing he believed he suffered a shock of 240 to 480 volts. Archway presented no evidence to rebut Winfrey's estimation. Specifically, the Appellate Panel found:

> In the mechanics of the accident, [Winfrey] was shocked with 240-480 volts of electricity; [Winfrey] believed the actual voltage was 480 volts. [Archway's] witness admitted at the hearing that he was unsure of the voltage amount involved, and [Archway] did not present any evidence to rebut [Winfrey's] estimation even though Employer had access to the rotisserie in question. The fact that [Archway] did not present any specific evidence leads us to rely on [Winfrey's] estimation.

We acknowledge the evidence as to the actual voltage which struck Winfrey was conflicting. However, Appellate Panel findings with respect to conflicting evidence are conclusive. *See Hargrove* at 290, 599 S.E.2d at 611 ("Whe[n] there are conflicts in the evidence over a factual issue, the findings of the Appellate Panel are conclusive."). Therefore, we are bound by the finding that Winfrey was struck by 480 volts of electricity. Accordingly, we find the Appellate Panel committed no error in relying on Dr. Travis's written medical opinion.

## X.     Appellate Panel's Reliance on Dr. Lide's Written Medical Opinion

Archway advances the same arguments against the Appellate Panel's reliance on Dr. Travis's written medical opinion as against the Appellate Panel's reliance on Dr. Lide's written medical opinion. For the same reasons discussed in Section IX above, we find no error in the Appellate Panel's reliance on Dr. Lide's written medical opinion.

**XI.  Appellate Panel's Reliance on Dr. Greenfield's Written Medical Opinion**

The same arguments Archway advanced against the Appellate Panel's reliance on Dr. Travis's and Dr. Lide's written medical opinions are advanced against the Appellate Panel's reliance on Dr. Greenfield's written medical opinion.  For the same reasons discussed in Section IX above, we find no error in the Appellate Panel's reliance on Dr. Greenfield's written medical opinion.

**XII.  Appellate Panel's Finding of Fact Winfrey Began Sweating the Night of the Attack**

Archway asserts the medical and testimonial evidence do not support a finding that Winfrey began sweating the night of the electrical shock.  Archway points to the fact Winfrey testified he began sweating the morning after the electrical shock to support their argument.  Archway contends the Appellate Panel relied on this Finding of Fact in finding the heart condition, chest injury, or both compensable.  Archway asks this court to remand this case to the Single Commissioner for a finding not inconsistent with the evidence and entry of a denial of compensability for the chest injury, heart condition, or both.

Winfrey testified before the Single Commissioner during the Form 50 hearing "the next morning when I got up, I was just dripping sweat."  The Single Commissioner stated in the decision and order she found Winfrey to be "very credible."  The Appellate Panel found "[Winfrey] began sweating the same night of the Thursday accident and also the next morning."  Any questions regarding Winfrey's testimony are simply matters of weight and credibility, which should be left to the ultimate fact finder.  *See Hargrove*, 360 S.C. at 289, 599 S.E.2d at 611 ("The final determination of witness credibility and the weight to be accorded evidence is reserved to the Appellate Panel.").  We recognize Winfrey's testimony can reasonably be construed to imply he began sweating during the night and awoke drenched in sweat.  We acknowledge the testimony could be read differently; however, we note it is not our place to override the Appellate Panel on this matter. *See id.* at 290, 599 S.E.2d at 611 ("Whe[n] there are conflicts in the evidence over a factual issue, the findings of the Appellate Panel are conclusive.").

**XIII.  Appellate Panel's Finding of Fact that Three Physicians Opined the Electrical Shock Resulted in Winfrey's Heart Attack Regardless of the Date on which the Heart Attack Occurred**

Archway asserts the doctors' opinions and the Appellate Panel's findings of fact can essentially be boiled down to a finding that because B happened after A, A caused B. Archway argues this is simply insufficient to support a finding of compensability under the act. Archway claims the Appellant Panel had to find Winfrey suffered his heart attack on a specific date to find it was caused by the electrical shock and was therefore compensable. We find the Appellate Panel's findings with respect to this matter to be supported by substantial evidence. Further, any questions regarding the logical consistency of the doctors' conclusions are simply matters concerning the weight of the evidence, which—as we have noted—is exclusively within the province of the Appellate Panel. *See Hargrove*, 360 S.C. at 289, 599 S.E.2d at 611 ("The final determination of witness credibility and the weight to be accorded evidence is reserved to the Appellate Panel.").

## XIV. CONCLUSION

For the foregoing reasons, the Appellate Panel's decision and order is

**AFFIRMED.**

**LOCKEMY, C.J., and WILLIAMS and THOMAS, JJ., concur.**